May it please the Court, Counsel. Good morning, Your Honor. My name is Joanna Christensen and I represent the appellant, Jesse Smith, in this matter. Mr. Smith has a substance abuse problem, and as a result, he's violated the terms of the Supercourts release several times, which is not unusual. This time it was Grade C violations. He used and possessed marijuana with a range of 5 to 11 months. Unfortunately, instead of considering that range and the factors, the District Court felt herself bound to a prior District Court statement at the second revocation hearing. When you read the statements of the District Court as a whole, isn't it really clear that the Court was stating that it could not go back and ignore Smith's history of noncompliance, rather than it could not ignore the range suggested by the prior Court? Well, I think there are two portions that I've actually highlighted on page 9 of my brief, and the first one is, and I can't go back, I can't take steps back. If it had just been that, I think that that argument would bring true, is that she's talking somewhat about his history and also the fact that he's been before the Court, different Courts, several times. But then she adds, I can't go back and give you less than the option you had back then. Well, but isn't that basically that she can't, that the Court can't ignore that Smith was given a huge break the last time by Judge McDade, and why would there be anything improper in the Court considering that he has squandered all of his previous opportunities that he was given? Wouldn't that come into play in the sentencing determination? Absolutely. I think that the judge could very well consider the fact that he was not a first-time violator, that he had had continuing problems, but the language that she used made it seem as if she was creating a new binding floor for his sentence. If that was the case, though, if she felt bound by what Judge McDade had said, he said if the guy came back he'd give him the stiffest sentence possible, which was not 15 months, it would have been, what, 24 months. It would have been 24 months, although She didn't give anything near 24 months. Right. I wonder, as I'm reading that, and this is speculation, of course, if Judge McDade was operating under the old rule that you got credit for what you previously served, and because he had already served 10 months it would be a 14-month cap at that point. That's just my speculation. And yes, she could have gone up to 24 months, and necessarily if she had backed up with the appropriate reasoning, the 15-month sentence, I don't think we could be arguing that was plainly unreasonable. You're not contending it was wrong for her to consider how Judge McDade had treated the case previously and what he had said. Right, no, I think that that's... It would be foolish not to. Right. It's entirely, it's part of the whole package is considering that this is not the first time he's been in front of the District Court, but what also should be less serious than the prior violations. But they were continuous. But they were continuous. But if he was given a break for more serious conditions, I think she should have considered all of that, and the fact that he was doing better, he was not completely compliant, but he hadn't amassed any more criminal charges as he had the previous time, and he had been working and getting a job and supporting his family, which also was different. And she did talk about that. She did talk about that. The concern is the language that she felt bound, that she can't go back below that option that he was given before. And he didn't take that option. Obviously, if he had taken that option, maybe we wouldn't be here, but that's the concerning language. And it's very similar to the Tatum case where the court was concerned before taking into account any of the things that had changed since then. So given the Tatum case, this language is very similar. It's not only being bound by the same judge, but being bound by a prior judge who is now being considered by a new judge. So our argument is essentially, and it comes down to, if it were a straight sentencing, a Rita argument. The judge thought that this guideline was binding on her, this arbitrary guideline that Judge McDade had threatened, and doubling his reign from 5 to 11 months to 14 to 24 months in her mind. We believe that although plainly unreasonable is a difficult standard to meet in this case where the judge has not used her discretion appropriately, we believe that Mr. Smith can meet that standard and should be reversed and remanded for resentencing. When will she be out under the current sentence? He will be out, his release date from the BOP is May 15th. He'll be out three months before, for March, around March for good time, not good time credits, for halfway house. So that's the reason we've expedited the decision in this case, because if the court is going to find it in our favor, we'd like Mr. Smith to have any benefit of that decision. Unless the court has further questions, I will reserve the rest of my time. Okay. Thank you, Ms. Richardson. Mr. Baum. Thank you, Your Honor. May it please the court, counsel. Your Honor, we believe that Judge Darrow correctly exercised her discretion and imposed a plainly reasonable sentence. Well, she may have been acting within her discretion. I think it's sort of really poor judgment. I mean, here's a fellow who actually has a job, and he may not have his job after 15 months. And what's the big deal? So he smoked marijuana a couple of times? What's that about? He and 30 million other people? So why is that a big deal? It's a big deal because he's on supervised release for the third time. I know. This is so... This doesn't make any sense at all, right? We believe it does make sense. Why? Because he is... Why don't you want... Why do you want these guys... Why do you want these guys not smoking marijuana? Of course, they're going to do anyway. What's that about? What we're more concerned about is with him abiding by the court's... So in other words, you give to rather limited people, you give pointless orders. And the idea is to show, can you follow a stupid order? And if not, we'll throw you back in jail. Now, what is that supposed to do? What is this supposed to accomplish? I believe the supervised release is supposed to help him reintegrate into society and the danger... Well, what does marijuana have to do with that? The concern, Your Honor, is that he's going to violate the law again. And so, yes, there are incremental smaller steps that are taken for him to try to... Is he a dealer or something? I don't believe there's any evidence that he was a dealer. Well, if he's just smoking marijuana, why on earth does the federal government care? Again, the federal government cares because... And nothing better to do with your resources? We are... Than deal with this petty, petty stuff? Where you have our resources to spend on enforcing the court... Well, they ought to take your resources away from you and stop sending people back into prison because they smoke marijuana. I think if we wanted to do that... In fact, this whole list of these... I don't know who writes these conditions of supervision. They're so badly done. I mean, look at this. Defendant shall not associate with any person convicted of a felony. Now, how is he supposed to know who has a felony conviction? Your Honor, our argument is not here that the... You just tell me, what does this mean? Is this strict liability that you associate with someone who didn't tell you he had a felony conviction? There's no argument for me, Your Honor, that these are well-written and that... I believe there's that... Well, if they're so badly written, why do you want to send people to jail for violating them? The one that is at issue here, Your Honor, is... But that's... The marijuana one is completely pointless. Now, in addition to that, he disobeyed... He didn't like his halfway house, so... You treat these people like children, right? He didn't like his halfway house. He said, like a truant or something. It just seems to me so wasteful of government... It's not only wasteful of government resource, it's wasteful of people's lives. Very bad for him to be sent back into jail for 15 months because he has this job. I think there is... There was a statement, I believe, Your Honor, that the job would even be there after he was sent to prison in this case. Well, good luck, because who's going to actually hold a job open for a con for 15 months? Now, they may say, yeah, we'll try to hold our job open, but they may have to hire someone to fill his job, and when he comes out, there's no vacancy for him. Do you ever consider things like that, when you're asking the people to be sent back to jail for these trivial violations? I think that was considered, Your Honor, when he was sent to the halfway house in this case. That very consideration was made for him to keep the job, and he couldn't there abide by the conditions either. So, yes, I think that was considered. I would also point out he was able to get... Well, why was he sent to a halfway house? Because he had the job, and rather than just go straight to revocation, the halfway house was... Well, why can't he just go home? I don't understand. Why does he have to go in a halfway house? Why don't you just let him... If he has a job, let him live at home and go to work. I don't get it. If he has a job, he still has to abide by the terms of supervised release and not smoking marijuana. How many people do you think actually abide by the terms of supervised release? Because the probation service is extremely understaffed, and a lot of the time, their idea of how you ensure compliance is you tell the person, call me up every week and tell me whether you're complying. Right? That's standard, right? Yes. That's worthless, obviously. It costs nothing to call up and say, oh, yeah, I comply. Yeah, I read them every night. I comply the next day. Right? Correct. So what is being accomplished by this enforcement program? I think in this case, what is being accomplished is supervised release is trust between the defendant and the court. He violated that trust three times now, and there is something to be accomplished by punishing him for violating the court's trust on three occasions. Why? What's accomplished? I think without that, I think it sends the message to him, when you get out, there's nothing to be accomplished by abiding by the rules. You're already a felon. You're a felon in possession of a gun in this case. It should hopefully deter him from re-offending the law on something more significant down the road. You should certainly tell him, that's of course a mandatory term, that he mustn't have a gun. That I understand. We think it provides him some deterrence from violating the law. Not smoking marijuana? Yes, Your Honor. We do think that Judge Darrow was not plainly unreasonable. I'm sure Judge Posner doesn't disagree with this, but I think that when a court puts a person back on the street and is responsible for their supervision, they don't want those people sitting around with others smoking marijuana and displaying that a federal supervised releasee can do this with impunity. There is some idea that you want supervised releasees to abide by the laws, even if they're trivial, even if they're not popular. That's correct. That person is a ward of the court, to some extent. That's correct. And Judge Darrow recognized at the very outset that this was a difficult case because he did show promising aspects. The problem is, it was not his first choice, or not his first chance, not his second chance, but his third. So if this supervised releasee gets all choked up on pot and gets in his car to drive to a job, he might hurt somebody. So the court may want that person to abide by even a trivial law. Absolutely, yes. So that is within the range of what a judge who's responsible for supervised release may require. That is correct, yes, Your Honor. Okay. Thank you. Thank you very much, Mr. Bohm. Ms. Christensen, do you have anything further? I'm not sure if I should, but I will. There is that saying, kicking fishes out of nets. Yeah, sometimes, you know, I can't help myself sometimes. Well, you came a long way. I did come a long way, and I might as well use my time appropriately. But, you know, I think the marijuana issue is perhaps not, I mean, I'm not going to touch it necessarily. I think that brings a lot of problems, and I think the problem sometimes with district court judges, and we see this often, is that there's a sense of responsibility for this offender being out on the street. And it's kind of a parent-child relationship, and a lot of them say, you know, if you do this again, I'm going to, you know, punish you. Like I would say to my two-year-old, if you throw your spoon at dinner again, you're going to sit in timeout. The difference is, is that due process does not apply in my house. The criminal rules, the federal rules of criminal procedure don't apply in my house, and they do in these cases. And I think that Judge Darrow needed to follow that and give Mr. Smith due process and consider the full range of what she was supposed to consider. So that's all I have to say. Thank you very much. Okay. Well, thank you very much. And you're a federal defender. I am. We thank the defenders for their efforts on behalf of the client. Thank you. We thank Mr. Bone as well. Yeah. See you soon. So court will be in recess.